**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------x

UNITED STATES OF AMERICA,

    -against-

KATHLEEN BREAULT and
KELLY McDERMOTT,

              Defendants.

---------------------------------------------x

Cr. No. 23-CR-158 (ARR)(TAM)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT BREAULT'S *OMNIBUS* MOTION

---

SUSSMAN & GOLDMAN, ESQS.
*Attorneys for Defendant Breault*
One Railroad Avenue
Suite 3
Goshen, NY  10924
(845) 294-3991

On the Brief:

Mary Jo Whateley, Esq. (mw9535)

## **PRELIMINARY STATEMENT**

The instant Indictment proceeds on the theory that defendants intentionally undermined a federal anti-COVID vaccination program by facilitating the pretense by unvaccinated persons that they were vaccinated when they were not.

But, as shown below, the notion that either NY State or the federal government could lawfully condition participation in a myriad of programs on obtaining a vaccination contravenes both jurisdiction's prohibition on mandatory vaccination regimes. The government could not lawfully require persons to be vaccinated and, if not, disallow them to participate in programs or deprive them of benefits. So, there was no LAWFUL program with which these defendants interfered, certainly no program authorized by Congress or the New York State legislature.

*Matter of Medical Pros. for Informed Consent v. Bassett*, 185 N.Y.S.3 578 (Jan. 13, 2023), *appeal dismissed as moot* at 2023 N.Y. App. Div. LEXIS 5028 (4th Dept. October 6, 2023] vacated the mandatory vaccination regime imposed by the New York State Department of Health. The day of the oral argument of the appeal the State Attorney General announced abandonment of the appeal and dissolution of the policy. These choices vindicate Supreme Court's determination that the state vaccination mandate, which is precisely what Breault was responding to, was unlawful *ab initio*.

As the court wrote, "The Commissioner [of Health] is specifically prohibited from implementing a mandatory immunization program for adults and children, "except as provided in section twenty-one hundred sixty-four and twenty-one hundred sixty-five of the Public Health Law [Public Health Law §206(l)(1)." An identical prohibition on mandatory immunization programs is found in *Public Health Law §613. Public Health*

*Law §2164* covers children attending day care through high school (*see, Public Health Law §2164(1)(a)*) and requires immunization for 'poliomyelitis, mumps, measles, diphtheria, rubella, varicella, Haemophilus influenzae type b (Hib), pertussis, tetanus, pneumococcal disease, and hepatitis B" *Public Health Law §2164(2)(a)*. Boosters are detailed in subparagraph b of said paragraph (*ibid. sub. C*). *Public Health Law §2165* covers college students and requires immunization for "measles, mumps and rubella" (Public Health Law §2165). COVID-19 or coronavirus generally are not covered by any of the aforementioned sections. Respondents are clearly prohibited from mandating any vaccination outside of those specifically authorized by the Legislature." *Id.* This Indictment was filed months after this decision.

### DISMISSAL IS WARRANTED BECAUSE THE INDICTMENT FAILS TO ALLEGE A VIOLATION OF A LAWFUL FUNCTION OR STATUTE

"Indictments under the broad language of the general conspiracy statute ( 18 USC 371), which penalizes conspiracies to defraud or commit offenses against the United States, must be scrutinized carefully as to each of the charged defendants because of the possibility, inherent in a criminal conspiracy charge, that its wide net may ensnare the innocent as well as the culpable." *Dennis v United States*, 384 US 855, 857 [1966].

In addition to "the danger [of injustice] inherent in a criminal conspiracy charge," *Dennis*, 384 U.S. at 860, the defraud clause of section 371 has a special capacity for abuse because of the vagueness of the concept of interfering with a proper government function. *United States v. Goldberg*, 105 F3d 770, 775 [1st Cir 1997].

A legally sufficient indictment "must identify the lawful government functions at issue with some specificity." *United States v. Concort Mgmt. & Consulting LLC*, 347 F. Supp. 3d 38 (D.D.C. 2018). Here, the Indictment alleges that defendants "did

knowingly and willfully conspire to impede, impair, obstruct and defeat the lawful government functions of HHS and CDC, departments and agencies of the United States, in the administration and distribution of COVID-19 vaccines and COVID-19 Vaccination Cards." *Indictment, ¶ 25.*

### Mandating EUA Covid-19 Vaccines was not a "legal function" of the CDC or HHS

Between December 11, 2020 and February 27, 2021, the FDA approved three Covid-19 vaccines for **emergency use only.** *Indictment, ¶ 10.* The status of these vaccines never changed during the relevant time period. Pursuant to the Emergency Use Authorization statute, mandating vaccines that have been approved only for emergency use, such as the Covid-19 vaccines at issue here, is **categorically prohibited**, since each person must be given "the option to accept or refuse administration of the product…" *21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III).* If this be so, a person can both forego taking the vaccination and may not be penalized for that decision. Absent the latter qualification, a mandatory vaccination regime exists because while people are allegedly free to choose not to vaccinate, the choice comes at a painful cost, as measured by loss of employment, income and the consequences which follow.

Likewise, as fully elaborated in *Medical Professionals for Informed Consent, supra.,* New York State prohibits mandatory vaccinations of adult, non-student residents. *See Public Health Law §§ 206(l) and 613(c).*

Here, despite these restrictions, the federal/state program sought to burden persons who refused to get vaccinated by denying them the right to participate in a panoply of otherwise lawful activities, including their right to work and support their families during COVID. The government claims that it was not "mandating" a regime of

vaccinations, but, by disallowing persons from engaging in basic activities without proof of vaccinations, this is precisely what it was doing, CONTRARY to the federal law cited above, let alone New York's Public Health Law.

So, the question raised is whether defendant Breault acted unlawfully when she helped covered persons circumvent the "mandatory" aspects of this vaccination regime, that which improperly prohibited person from engaging in basic activities absent the vaccination card, a symbol of mandatory vaccination and an entrance card to a whole range of activities which would otherwise be barred by citizens [despite the prohibition in both state and federal law of mandatory vaccination regimes].

If a law or regulation mandating vaccination is contrary both federal and state law, then how can someone who assists persons evade the impact of such a "program" [which, in practice, has imposed such a regime] be held criminally liable. Here, defendant merely facilitated the exercise by those who sought out her assistance of their right to not be vaccinated *and* not to bear the unlawful and often dire consequences of the mandatory vaccination regime.

Recently, our courts have caught up to these concepts; for example, as explained above, New York State has abandoned its mandatory vaccination program which costs tens of thousands of health care workers around their state their employment and severely harmed the delivery of health care in many parts of our state and New York City has now been ordered to reinstate and provide back pay to teachers who sought religious exemptions to mandatory vaccination programs in public schools, were denied, refused to vaccinate, and lost their jobs. *DiCapua, et al., v. City of NY*, Index No. 85035/2023 [Sup. Ct. Staten Island 2023].

For the Department of Justice to pursue a prosecution to penalize a person for his exercise of legal rights is "patently unconstitutional." *Bordenkircher v Hayes*, 434 US 357, 363 [1978]); *Chaffin* v. *Stynchcombe, supra,* at 32-33, n. 20; *United States* v. *Jackson*, 390 U.S. 570.

Co-defendant claims that she did not commit fraud against the United States because doing so would require a federal program which, in fact, did not exist here. The government replies that the program did exist and was implemented in concert with states. Breault joins her co-defendant's argument.

In defending the existence of a federal program, the government points to no statute which authorized or defined the federal program and made unlawful conduct which interfered with it or imposed specific sanctions for any such conduct. The government submits that the executive branch implemented a program on its own and without any authorizing legislation. However, it is respectfully submitted that dismissal of the indictment is warranted since fundamental principles of due process mandate that no individual may be forced to speculate, at the peril of indictment, whether his/her conduct is prohibited. *See Grayned v. City of Rockford, 408 U.S. 104, 108 (1972); United States v. Harriss, 347 U.S. 612, 617 (1954); Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939); McBoyle v. United States, 283 U.S. 25, 27 (1931).*

As applied here, a predicate for a lawful Indictment would have been adoption by Congress of a law which both defined the federal program and enumerated the consequences of its violation. The government points to no so such enactment and, to our knowledge, there was none, notwithstanding the serious nature of the pandemic. Congress also did not amend the afore-cited EAU statute as a predicate to any

mandatory vaccination regime or sanction a federal program which cost workers their jobs [with the attendant consequences] during the pandemic.

"... to ensure that a legislature speaks with special clarity when marking the boundaries of criminal conduct, courts must decline to impose punishment for actions that are **not** "'plainly and unmistakably'" proscribed. " *Dunn v United States*, 442 US 100, 112-113 (1979), *quoting*, United States v. *Gradwell*, 243 U.S. 476, 485 (1917); *see, also*, United States v. *Harris*, 347 U.S. 612, 617, 98 L. Ed. 989, 74 S. Ct. 808 (1954); *Lambert v. California*, 355 U.S. 225, 228, 2 L. Ed. 2d 228, 78 S. Ct. 240 (1957); *United States v. MacKenzie*, 777 F.2d 811, 817 (2d Cir. 1985), *cert. denied* 476 U.S. 1169, 90 L. Ed. 2d 977, 106 S. Ct. 2889 (1986); *United States v Gulla*, 833 F Supp 274, 278 (SDNY 1993). This logic should apply here and make suspect prosecution of persons who violated a program which is ineffable and was never statutorily adopted.

Here, as noted, the Government cites no specific law which criminalized McDermott or Breault's behavior. There is no federal law which states that people who acted as they are alleged to have acted may be criminally prosecuted and subject to certain punishment. Moreover, Breault acted to assist persons escape the draconian consequences of an unauthorized federal program which had no basis in Congressional action, was predicated upon the discredited claim that vaccinations affected the spread of COVID and did impose actual hardships on those with contrary religious convictions based upon that fraud. In New York State, such rationale has already been found to have been arbitrary and capricious. "Arbitrary action is without sound basis in reason and is generally taken without regard to the facts. *Pell v. Bd. of Ed. of U.F.S. Dist. No. 1*, 34 NY2d 222, 231...The Mandate is entitled "Prevention of COVID-19 transmission by covered entities" (10 NYCRR § 2.61). In true Orwellian fashion, the Respondents

acknowledge then-current COVID-19 shots do not prevent transmission..." Medical Profs. at 586.

Accordingly, assisting these individuals avoid something which both Congress and the New York State legislature specifically prohibited should not subject Breault to criminal prosecution. "Making it easy for people to cheat on their taxes hardly deserves a good conduct medal. And Caldwell might indeed have conspired to obstruct the government by deceitful or dishonest means; the government may still try to prove this by retrying her before a properly instructed jury. But what the government actually did prove - that Caldwell conspired to make the IRS's job harder - just isn't illegal. "There are places where, until recently, "everything which [was] not permitted [was] forbidden . . . . Whatever [was] permitted [was] mandatory . . . . Citizens were shackled in their actions by the universal passion for banning things." Yeltsin Addresses RSFSR Congress of People's Deputies, BBC Summary of World Broadcasts, Apr. 1, 1991, *available in* LEXIS, Nexis Library, OMNI file. Fortunately, the United States is not such a place, and we plan to keep it that way. If the government wants to forbid certain conduct, it may forbid it. If it wants to mandate it, it may mandate it. But we won't lightly infer that in enacting 18 U.S.C. § 371 Congress meant to forbid all things that obstruct the government or require citizens to do all those [**11] things that could make the government's job easier. So long as they don't act dishonestly or deceitfully, and so long as they don't violate some specific law, people living in our society are still free to conduct their affairs any which way they please." *United States v Caldwell*, 989 F2d 1056, 1061 [9th Cir 1993].

**CONCLUSION**

Contrary to the government's characterization of defendants' arguments as "factual", in fact, under the plain language of the EUA statute, the CDC and HHS lacked authority to mandate EUA vaccines in the first instance, as Congress had specifically prohibited mandatory vaccination with an EUA. Further, as a matter of law, New York state legislature strictly prohibited the mandatory vaccination of adult, non-student residents of its State.

Thus, the court should dismiss the indictment in its totality, as having no basis in law.

Dated: November 7, 2023.
Goshen, New York

Yours respectfully,

MICHAEL H. SUSSMAN (3497)

SUSSMAN & GOLDMAN
PO BOX 1005
GOSHEN, NEW YORK 10924
(845)-294-3991

Counsel for Breault

Mary Jo Whateley, Esq., on the brief